740 P.2d 432 (1987)
In the Matter of A.S., A Minor Under the Age of Eighteen Years.
No. S-1739.
Supreme Court of Alaska.
July 17, 1987.
*433 Michael J. Walleri, Fairbanks, for Tanana Chiefs Conference, Inc., appellant.
D. Rebecca Snow, Asst. Atty. Gen., Fairbanks, Harold M. Brown, Atty. Gen., Juneau, for Div. of Family and Youth Services, Dept. of Health and Social Services, State of Alaska, appellee.
D. Randall Ensminger, Fairbanks, for Natural Mother of A.S.
Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION
RABINOWITZ, Chief Justice.
The Native Village of Northway ["Northway"] appeals an order of the superior court which extended state custody of A.S., a child previously adjudicated to be in need of aid, for a period not to exceed two years. Northway contends that the applicable statutory standard for such an extension was not met and that the order violates the Indian Child Welfare Act ["ICWA"], 25 U.S.C. §§ 1901-1963.[1]

I. FACTS AND PROCEEDINGS BELOW.
A.S. is a five-year old Athabascan child. She is a member of the Native Village of Northway by virtue of her parents' membership. When she was approximately four months old, the State, Department of Health and Social Services, Division of Family and Youth Services ["the Department"] took custody of her as a child in need of aid and placed her in foster care with a paternal aunt and uncle, the G's, because neither of her parents was willing and able to care for her. At that time, her mother had a severe alcohol abuse problem; A.S. had been hospitalized in Fairbanks for two months,[2] during which time her mother visited her only infrequently and then left Fairbanks without notifying the hospital. A.S.'s father has never made any active effort to be a parent to her.
In August 1985, the Department proposed to return A.S. to her mother, who had arrested her alcohol problem in 1983. The Department believed that the lack of extended contact between mother and child necessitated a process of gradual reunification in order to try to avoid emotional damage to A.S. Accordingly, in October, the Department implemented a graduated visitation *434 schedule designed to ease A.S.'s transition back to her mother.
In September 1985, the G's commenced proceedings before the Northway Village Council to adopt A.S. After a hearing on October 15, an order of adoption was entered by the council over the natural mother's objection. The order stated that A.S. "shall be the child of [the G's] for all legal purposes" but did not terminate the natural parents' rights; it made them "subject to the primary parental rights of [the G's]."
Subsequently, the G's filed an action in United States District Court in Anchorage for injunctive and declaratory relief, seeking to prevent the natural parents' and the Department's interference with the Northway tribal court order.[3] On December 30, 1985, the federal court issued a preliminary injunction which enjoined the Department from effecting its proposed visitation schedule and enjoined the individual defendants from "taking any action inconsistent with the Village of Northway adoption order ... pending a final order in this case."[4]
Because state custody of A.S. was due to expire on April 24, 1986, the Department petitioned the superior court on April 4 for an extension of custody for a period not to exceed two years. The Department contends that it sought this extension because the judge in the federal case stated specifically (during a discovery teleconference in which counsel for Northway and for A.S.'s mother participated) that he intended the preliminary injunction to "maintain the status quo," including continuation of state custody.[5]
Northway opposed the extension of custody; A.S.'s mother stipulated to it. After hearings, the superior court granted the requested extension. The court found in part that: "[b]ased on the pleadings before the court, [the mother's] stipulation to the extension of custody, and the arguments of counsel ... it is in the best interests of [A.S.] and of the public that custody be extended ... in order to permit continued movement toward return of A.S. to her mother's care." Northway subsequently filed this appeal.

II. WAS THE APPLICABLE STATUTORY STANDARD FOR AN EXTENSION OF STATE CUSTODY OF A CHILD IN NEED OF AID MET?

A. The Applicable Standard.

The pivotal question underlying this appeal is whether the Department must show that the conditions which justified the commitment of a child in need of aid to state custody continue to exist in order to obtain an extension of custody pursuant to AS 47.10.080(c)(1)(A).[6]
AS 47.10.080(c)(1) provides in relevant part that:
the [D]epartment [of Health and Social Services] may petition for and the court may grant in a hearing (A) two-year extensions of commitment which do not extend beyond the minor's 19th birthday if the extension is in the best interests of the minor and the public; ....
[Emphasis added.] Northway contends that the superior court erred in granting the petition for extension in this case because the court could not find by a preponderance of the evidence that the basis upon which A.S. was adjudicated a child in need *435 of aid continues to exist. Northway further argues that AS 47.10.083 governs the determination of whether A.S. should remain in the state's custody. That section provides:

Review hearing information. In the case of a child in need of aid, the child shall be returned home at the review hearing under AS 47.10.080(f) unless the court finds by a preponderance of the evidence that the basis upon which the child was adjudicated under AS 47.10.010(a)(2) continues to exist.[7]
AS 47.10.080(f), in turn, provides in part that the court shall review an order committing a child in need of aid to the Department for placement on an annual basis, and may review the order more frequently "to determine if continued placement, ... as it is being provided, is in the best interest of the minor and the public."[8]
Given that both AS 47.10.080(c)(1)(A) and AS 47.10.080(f) contain the "best interests" standard, we think it reasonable to assume that the legislature intended the standard to have the same meaning with respect to each type of continuation of custody, namely a section .080(c)(1)(A) extension beyond the term of the original order and a section .080(f) "extension" beyond the first year of the order until its expiration.[9]
We do not think that "best interests" in AS 47.10.080(c)(1)(A) should be interpreted to require the state to show that the basis upon which a child was adjudicated in need of aid continues to exist when the statutes can be harmonized without such an inference.[10] Had the legislature intended "best interests" in section .080(c)(1)(A) to mean that the conditions which previously resulted in the removal of the child must continue to exist, as specified in section .083, it could have said so specifically.[11] The structure of the statutory scheme  placing the continuing conditions requirement in a separate section (AS 47.10.083), which then incorporates the section authorizing annual review (AS 47.10.080(f))  lends support to our conclusion. The "continuing conditions of need" requirement for continued custody found in section .083 should be viewed as an additional requirement beyond "best interests," not as the equivalent thereof.
Our conclusion that "best interests" should not be equated with a "continuing conditions of need" requirement is implicit in a definition of "best interests" which encompasses multi-faceted criteria. We have repeatedly held that no single factor *436 should be allowed to outweigh all others in applying the "best interests of the child" standard which governs analogous child custody disputes.[12]
Therefore, we hold that "best interests" as used in AS 47.10.080(c)(1)(A) does not constitute a requirement that the state demonstrate the continuing existence of AS 47.10.010(a)(2) conditions of need in order to obtain an extension of custody. In a situation such as that present in this case, the state may require an extension of custody in order to implement a plan for reuniting the family without causing emotional trauma to the child by virtue of a sudden change of circumstances; the "best interests" of the child and the public are served by granting the extension even though presumably the conditions which necessitated removal no longer exist.

B. Application of the Statutory Standard.

Our review of the record persuades us that the superior court's finding that an extension of state custody under AS 47.10.080(c)(1)(A) was in the best interests of A.S. is not clearly erroneous. Viewed in the light most favorable to the Department, the evidence supports the finding that the best interests of A.S. were met. The guardian ad litem stated that the extension of custody would be in A.S.'s best interests; the mother also favored the extension, although it does appear from the record that her position was primarily motivated by her self-interest in getting A.S. back.[13] The caseworker assigned to A.S. explicitly stated in the petition for extension that returning the child to her mother without a gradual reunification process  for the implementation of which the extension was necessary  would be likely to cause emotional damage to the child, and that the degree of trauma which reunification might cause could not be determined since mother and child had not had extended or unsupervised contact for three years.[14] Northway offered no evidence to rebut the state's contention regarding this likelihood of emotional damage.[15]

III. IMPACT OF THE UNITED STATES DISTRICT COURT'S PRELIMINARY INJUNCTION.
As previously noted, the G's filed an action in federal district court for injunctive and declaratory relief against the state and the natural parents seeking to prevent their interference with the Northway tribal court's order of adoption. The overriding purpose of the injunction issued by the federal court was to maintain the status quo  specifically, to ensure that the state's *437 custody would continue  pending a final order from that court.[16] The state notes that the federal court's order left "the State and A.S... . in the conflicted [sic] position of being required under state statute and court order and under ICWA to try to reunite A.S. with her [mother], but being prevented from changing the `status quo' by federal court order."[17] Most compelling is the state's argument that unless the superior court found a basis for continuing custody in the state, state law and ICWA would compel the court to order A.S. returned to her mother.[18] Given this circumstance, the order extending state custody under AS 47.10.080(c)(1)(A) in effect maintained the status quo in regard to the custody of A.S. and was not inconsistent with the order of the federal court.[19]
The judgment of the superior court extending the state's custody of A.S. is AFFIRMED.
NOTES
[1] Northway's failure to comply with established appellate procedure results in abandonment of its ICWA arguments. Northway asserted that the order extending custody violated 25 U.S.C. § 1912(a), which establishes notice requirements under ICWA. This claim and also the contention that the order violated 28 U.S.C. § 1360 (which requires that "full force and effect" be accorded tribal law) are deemed abandoned since Northway did not raise them below and does not argue them in either its opening or reply brief to this court. See Hitt v. J.B. Coghill, Inc., 641 P.2d 211, 213 n. 4 (Alaska 1982) (points argued only in reply brief and not in opening brief were waived); State v. O'Neill Investigations, 609 P.2d 520, 528 (Alaska 1980) (failure to argue a point in brief constitutes abandonment of it); Williams v. Alyeska Pipeline Serv. Co., 650 P.2d 343, 351 (Alaska 1982) (argument not considered on appeal because not raised below). Northway has additionally specified as error that the order extending custody failed to accord "full faith and credit" to the tribal court's order of adoption under 25 U.S.C. § 1911(d), and violated the requirements of 25 U.S.C. § 1912(e) because it was not supported by testimony of qualified expert witnesses and by clear and convincing evidence of serious emotional harm to the child. We hold that Northway has abandoned these points by its failure to raise them in the superior court. Williams, 650 P.2d at 351. Further, on appeal Northway's discussion of these points is limited to two conclusory paragraphs, which we also consider an abandonment of these points. O'Neill Investigations, 609 P.2d at 528.
[2] A.S. has experienced severe medical and developmental problems as a result of having suffered from meningitis (the reason for her hospitalization) and fetal alcohol syndrome.
[3] The defendants in the federal case are the State of Alaska; John Pugh, Commissioner of the Department of Health and Social Services; and the natural parents of A.S. The court granted Northway's motion to intervene as plaintiff.
[4] The injunction interrupted the visitation schedule before any extended or unsupervised visits took place, but supervised visitation by the mother of two 1½  2-hour periods per week continued.
[5] In his argument to the superior court, counsel for Northway agreed that the state is not enjoined from continuing its custody of A.S. but insisted that nothing in the federal court's order contemplates such continued custody.
[6] Resolution of this question hinges on general statutory interpretation and thus is within the special competency of this court. State v. Dupere, 709 P.2d 493, 495 (Alaska 1985), modified, 721 P.2d 638 (Alaska 1986). As to such a matter we exercise our independent judgment and need not defer to the superior court's interpretation. See State, Dep't of Revenue v. Amoco Prod. Co., 676 P.2d 595, 599 n. 5 (Alaska 1984).
[7] AS 47.10.010(a)(2) defines the circumstances in which the court should find a child in need of aid to include: the child having no parent caring or willing to provide care, including physical abandonment; the child being in need of medical treatment to cure, alleviate or prevent substantial physical harm, which treatment the parent has knowingly failed to provide; the child having suffered substantial physical harm, or there is an imminent risk that the child will suffer such harm as a result of actions done or conditions created by the parent or by the parent's failure adequately to supervise the child; and the child having suffered substantial physical abuse or neglect as a result of conditions created by the parent.
[8] The order granting the extension did not indicate whether the court relied on section .083 or .080(f) but, as indicated at the outset, merely stated the court's finding that based on the pleadings, the mother's stipulation to the extension of custody, and the arguments of counsel, "it is in the best interests of [A.S.] and of the public that custody be extended ... in order to permit continued movement toward return of A.S. to her mother's care." During the hearing, the court indicated its view that whether continued custody is in the best interests of A.S. was "the only consideration for the Court."

We observe that sections .080(c)(1)(A) and .083 use "best interests," plural, whereas section .080(f) employs the singular form, best "interest." This difference is void of significance.
[9] See People v. Dillon, 34 Cal.3d 441, 194 Cal. Rptr. 390, 405, 668 P.2d 697, 712 (1983) (en banc); Rodrigues v. State, 52 Hawaii 156, 52 Hawaii 283, 472 P.2d 509, 518 (1970) (words or phrases repeated in different sections of statute are presumed to be used in same sense throughout); see generally 2A C. Sands, Sutherland Statutory Construction ["Sutherland"] § 46.06 (rev. 4th ed. 1984).
[10] See 2A Sutherland § 47.38, at 265 (cautioning against filling in text of statute from its purposes unless plainly necessary).
[11] Cf. United Parcel Serv. v. State, Dep't of Revenue, 102 Wash.2d 355, 687 P.2d 186, 191 (1984) (en banc) (if legislature uses certain language in one instance and different language in another, then a difference in legislative intent exists).
[12] S.O. v. W.S. (In re Adoption of J.D.S.), 643 P.2d 997, 1006 (Alaska 1982); Johnson v. Johnson, 564 P.2d 71, 74-75 (Alaska 1977), cert. denied, 434 U.S. 1048, 98 S.Ct. 896, 54 L.Ed.2d 800 (1978).
[13] The father evidently supports the adoption of A.S. by the G's. The father failed to appear after being served with notice of the extension hearing.
[14] Northway argues that denial of the Department's petition for an extension of custody would not require the superior court then to return A.S. to her mother, but rather that under AS 47.10.080(e) the court could release the child to the G's, who are A.S.'s parents under the tribal court order. Section .080(e) provides, "If the court finds that the minor is not ... a child in need of aid, it shall immediately order the minor released from the department's custody and returned to the minor's parents, guardian, or custodian, and dismiss the case."

If deemed proper under the statute, such an outcome would avert the possibility of emotional damage on which the Department relies. We believe, however, that the superior court correctly concurred in the state's position that, absent an extension, A.S. must be returned to her mother.
[15] Northway simply asserted in its brief that "the record totally lacks any evidence which suggests the child is in any danger relative to either [her mother's or adoptive parents'] home." The Department argues that Northway cannot now assert that there would be no likelihood of emotional damage to A.S. if she is abruptly returned to her mother because the tribe induced the federal court to enjoin the Department's implementation of its visitation plan based on the probable harm to the child.

Northway relied on the mother's apparent recovery from alcoholism (which the Department does not deny) as grounds for denial of the extension. It cited the Department's Report for Annual Review, which describes an increasingly positive relationship between A.S. and her mother.
[16] In addition to enjoining the state from "effecting the visitation program" proposed in its petition for an extension of custody, the federal court's order further provided:

That the individual Defendants, and all others acting in concert with them, are enjoined from taking any action inconsistent with the Village of Northway adoption order of October 15, 1985, pending a final order in this case.
... That the foregoing should not be construed to prohibit supervised visitation of [A.S.] by her natural parents so long as such visits are not contrary to the instructions of health care professionals.
[17] The state supported this assertion with a comparison of AS 47.05.060 with 25 U.S.C. §§ 1902, 1912(e), 1916(a) and (b), 1921, and 1922. AS 47.05.060 sets forth the purpose of Title 47 as it relates to children as

[T]o secure for each child the care and guidance, preferably in the child's home, that will serve the .. . welfare of the child and the best interests of the community; to preserve and strengthen the child's family ties whenever possible, removing the child from the custody of the parents only as a last resort when the child's welfare or safety or the protection of the public cannot be adequately safeguarded without removal... .
The state elaborated that, as a consequence of the federal court's order, A.S.'s mother
... could not pursue her rights under state law and ICWA and actually regain custody of her child. She could not even insist on progress in the plan agreed to by the state to provide a gradual transition for A.S. from her long time foster home to her mother's home, a plan developed to avoid possible emotional damage to A.S. The social worker's reason for seeking the extension of custody was to guard against any possible trauma to A.S.: from an abrupt change of caretakers or from being unable to bond to her mother. Moreover, the guardian ad litem concurred in that objective.
[18] AS 47.10.083, .080(e). See also AS 47.05.060.
[19] Inherent in this conclusion is our view that the federal court's order did not render this appeal moot. If the superior court's extension of custody pursuant to AS 47.10.080(c)(1)(A) is of no effect, then the state has no basis for its continuing custody of A.S. and would have to return her to her natural parent, a result antithetical to the federal court's intent to maintain the status quo with respect to her custody.