**DANIELLE A., Appellant,**

v.

**STATE of Alaska, DEPARTMENT OF HEALTH AND SOCIAL SERVICES, OFFICE OF CHILDREN'S SERVICES, Appellee.**

No. S–13377.

Supreme Court of Alaska.

Sept. 11, 2009.

---

James M. Hackett, Law Office of James M. Hackett, Fairbanks, for Appellant.

Gayle L. Garrigues, Assistant Attorney General, Fairbanks, Richard A. Svobodny, Acting Attorney General, Juneau, for Appellee.

Before: FABE, Chief Justice, EASTAUGH, CARPENETI, WINFREE, and CHRISTEN, Justices.

*OPINION*

CHRISTEN, Justice.

## I. INTRODUCTION

A mother appeals the extension of a superior court order granting custody of her daughter to the Office of Children's Services (OCS). In the mother's first appeal, we affirmed an order extending custody. In this, her second appeal, the mother challenges a subsequent extension of custody. She raises two main arguments: the superior court erred in extending custody (1) without making the findings necessary to remove the child from parental custody under the Indian Child Welfare Act (ICWA), 25 U.S.C. § 1912(e); and (2) without making the ICWA placement and active efforts findings required by Alaska Child in Need of Aid (CINA) Rule 10.1(b). We conclude that: (1) neither ICWA nor Alaska's CINA statutes and rules require courts to make "removal findings" before extending OCS's custody of a child; and (2) the superior court did not clearly err when it found that the child continued to be a child in need of aid and that extending custody was in her best interests. But CINA Rule 10.1(b) requires that courts inquire into and determine whether "active efforts" are being made before extending custody. Because the court did not make this inquiry and determination, we remand.

## II. FACTS AND PROCEEDINGS

Roberta was born in 1997 to Danielle.[1]

---

1. *Danielle A. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, Mem. Op. & J.

Roberta is an "Indian child" under ICWA.[2] Roberta's father was not involved in her life and his parental rights were terminated.[3] OCS took emergency custody of Roberta on March 1, 2005, and custody was later extended for one year.[4] OCS filed a petition to terminate Danielle's parental rights in November 2006.[5] Trial occurred in November and December 2007.[6] The court found that Roberta was a child in need of aid,[7] but it also found that OCS failed to make active efforts to prevent the breakup of the Indian family and did not provide proof beyond a reasonable doubt that leaving Roberta in Danielle's custody would likely cause serious emotional or physical damage.[8] The court concluded "it was in Roberta's best interests to be returned to Danielle."[9] The court "ordered that Roberta remain in OCS custody for up to an additional year pending reunification efforts."[10]

Danielle moved for reconsideration on December 10, 2007.[11] She argued that CINA Rules 10.1(b)(2) and 17(c)(2) "expressly prohibit a final disposition order" given the court's finding that OCS had not made "active efforts."[12] On December 12, 2007, Danielle filed a motion for an order: (1) directing OCS to comply with active efforts requirements under 25 U.S.C. § 1912(d); (2) imposing sanctions against OCS for failing to make active efforts; and (3) entering a one-year supervision order in lieu of continued OCS custody of Roberta.[13] The court held a hearing in April 2008 but did not rule on these motions.[14]

In June 2008 the trial court issued its written decision from the termination trial.[15] The court ordered continued OCS custody, and supervised and unsupervised visitation "until the [reunification] transition is complete, or until December 4, 2008, whichever

No. 1339, 2009 WL 1140442, at *1 (Alaska, Apr. 29, 2009). A more complete discussion of the facts pertaining to Danielle's case appears in *Danielle A.*, 2009 WL 1140442, at *1. We use pseudonyms to protect the parties' privacy.

2. *Id.*

3. *Id.*

4. *Id.*

5. *Id.*

6. *Id.*

7. Under AS 47.10.011, the court may find a child to be a child in need of aid if it finds by a preponderance of the evidence that any of twelve conditions exist, including abandonment, per subsection (1); substantial physical harm or substantial risk of substantial physical harm, per subsection (6); and neglect, per subsection (9).

8. *Danielle A.*, 2009 WL 1140442, at *1.

9. *Id.*

10. *Id.*

11. *Id.*

12. *Id.* (internal quotation marks omitted).
 CINA Rule 10.1(b)(2), dealing with out-of-home placements of Indian children, provides: *Effect of a Finding that Requirements Have Not Been Met.* A finding that the requirements of 25 U.S.C. §§ 1912(d) [active efforts] or 1915(b)

[placement requirements] have not been met is not in itself a ground for restoring the child to the parent ... or dismissing a petition and does not affect the court's ability to proceed to adjudication. However, the court cannot enter a disposition order if the court finds that the requirements of 25 U.S.C. § 1912(d) have not been met. In those circumstances, the court must postpone disposition until the court finds that active efforts have been made. On motion of a party ... the court may order the Department to comply with 25 U.S.C. §§ 1912(d) or 1915(b) within a reasonable time. If the Department fails to comply with this order, the court may impose appropriate sanctions.
CINA Rule 17(c), governing disposition hearings and orders, states, in relevant part:
If the child has been placed outside the home, the court cannot enter a disposition order if the court finds ... (2) in cases involving an Indian child, that the requirements of 25 U.S.C. § 1912(d) (active efforts) have not been met. If the court finds that the Department has failed to make required reasonable efforts or that the requirements of 25 U.S.C. § 1912(d) have not been met, the court must postpone entering a disposition order until the court finds that reasonable efforts or active efforts have been made. The child should remain in temporary custody pending disposition.

13. *Id.* at *2.

14. *Id.*

15. *Id.*

comes first."[16] In October 2008 the court issued written orders denying Danielle's motions for reconsideration, to compel active efforts, and for sanctions.[17]

In Danielle's first appeal, we affirmed the superior court's December 2007 extension of OCS custody and its denial of Danielle's motion to invalidate that extension.[18] We concluded the superior court did not err when it found that extending custody was in Roberta's best interests under AS 47.10.080(c)(1).[19] We reasoned that "[t]he context of the [December 2007] hearing discussion shows that the court considered a return to Danielle's care to be in Roberta's long-term best interests," but the "court also recognized that work needed to be done for reunification efforts to succeed."[20] We explained: "The [trial] court found that it was not in Roberta's best interests to be immediately returned to Danielle, and that finding is more than adequately supported by the evidence in the record."[21]

In November 2008, OCS again petitioned to extend custody for up to another year. OCS stated the permanency plan remained reunification with Danielle and recommended that reunification continue through a gradual transition, culminating in permanent placement with Danielle by March 2009. Danielle opposed the motion, citing an October 2008 letter from Katharine Furniss, a program manager at Resource Center for Parents and Children, which stated that Danielle had "successfully engaged in all Family Reunification services" from January to October 2008, and recommended OCS "continue to increase unsupervised in-home visits and overnights with the intent to reunify [Danielle] and her daughter within the next six months."

The guardian ad litem (GAL) submitted a report in December 2008 advising against an "abrupt return home" and recommending extending custody so a six-month transition plan could be implemented. By this time, Roberta was staying with Danielle "for three consecutive overnights and four days" per week.

In December 2008 Danielle moved to enforce the court's June 2008 judgment "ordering reunification between mother and daughter [and] directing reunification no later than December 4, 2008." She argued, among other things, that there were "continuing ICWA violations." In support of her motion, Danielle submitted a letter from Elizabeth Kraska, the family therapist who was providing "joint counseling" to Danielle and Roberta. Kraska wrote: "Due to the lengthy separation and the positive work I see happening, it is my recommendation that visits continue to increase by a day and an additional overnight each month." The undated letter includes Kraska's estimation that reunification could occur "within or less than six months," barring any "increased signs of stress/anxiety, or if a therapist observes a deterioration in their relationship."

On December 3 and 4, 2008, the court held a hearing on OCS's motion to extend custody and Danielle's motion to enforce the December 4 reunification deadline. Danielle urged the court to return custody to her immediately, claiming she had "done everything" required by OCS, the court, and her counselors. She characterized the issue before the court as "removal." Danielle argued that before the court could extend OCS's custody, it had to find, by qualified expert witness testimony, that placement with her would likely cause serious emotional or physical harm to Roberta.

As she had over a year earlier, the GAL recommended against returning Roberta to Danielle's custody until further reunification

---

16. *Id.* (internal quotation marks omitted).

17. *Id.* at *2, *5.

18. *Danielle A.,* 2009 WL 1140442, at *1, *4–*5.

19. *Id.* at *3.

Under AS 47.10.080(c):
If the court finds that the child is a child in need of aid, the court shall (1) order the child committed to the department for placement ... for a period of time not to exceed two years ... except that the department or the child's guardian ad litem may petition for and the court may grant in a hearing (A) one-year extensions of commitment ... if the extension is in the best interests of the child.

20. *Danielle A.,* 2009 WL 1140442, at *3.

21. *Id.*

efforts could occur. The GAL told the court that the counselor and the two clinical therapists working with the family, Kraska (working jointly with Danielle and Roberta) and Cathy McCarthy (working solely with Roberta), are "adamant that if you rush [reunification], this is going to be detrimental and not be a success for [Danielle] and the child. The child is not ready. They also believe [Danielle] is not ready." The GAL expressed the entire clinical team's view that "if the state drops custody or the court does, . . . it's going to harm this family." OCS agreed, arguing that "custody should be extended for another year, [and] that the child's not yet ready to go home because of some of the difficulties that occurred in the last year."[22]

The court issued an oral ruling on December 4, 2008 finding that Roberta continued to be a child in need of aid based on neglect and denying Danielle's request to return Roberta to her immediately. The court relied on the GAL's statements and Kraska's letter. It also referred to the findings memorialized in its June 2008 written order, stating it "felt that it was important that there be a transition" and "based on [the June 2008] order, . . . continued custody and supervision's in the best interests of the child." The court found Roberta was "gradually integrating" into Danielle's home, the transition was occurring but had not been completed, more time was needed for reunification to succeed, and "it's contrary to [Roberta's] welfare to fully place [her] in [Danielle's] home at this time." The court extended custody for six months, through June 4, 2009, ordering a

"review of this case every two months during the next six months," and explaining that if a review revealed that fewer than six months was needed, the family could be reunited earlier.[23]

Danielle appeals.

## III. STANDARD OF REVIEW

 We affirm a trial court's factual findings in CINA cases "unless they are clearly erroneous."[24] When interpreting CINA statutes and rules, we apply our independent judgment, "adopting the rule of law that is most persuasive in light of precedent, reason, and policy."[25] We independently review the question of "[w]hether the superior court's findings comport with the requirements of ICWA or the CINA statutes and rules."[26]

## IV. DISCUSSION

### A. The Superior Court Was Not Required To Make Removal Findings Under 25 U.S.C. § 1912(e) To Extend OCS's Custody of Roberta.

 Danielle argues that to extend OCS's custody of Roberta, the court was required to find under 25 U.S.C. § 1912(e), "by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent . . . is likely to result in serious emotional or physical damage to the child."[27] OCS contends the superior court did not have to make this ICWA finding to extend OCS's custody because AS 47.10.080 and CINA Rule 19.2 control, and that those authorities require the

---

**22.** In its petition to extend custody, OCS described Danielle as being inconsistent in helping Roberta with schoolwork; failing to attend more than one parent-teacher conference in a year; denying that Roberta has fetal alcohol syndrome, educational and social delays, and mental health needs; and belittling Roberta. Additionally, family counseling was delayed because Roberta initially "refused to participate in counseling with [Danielle]," and because when counseling began, Danielle was "very defensive."

**23.** On December 26, 2008, the court issued a written order, effective December 4, extending custody for six months and providing written findings; it issued a corrected order on January 22, 2009 that did not change the dispositive rulings or effective date.

**24.** *Brynna B. v. State, Dep't of Health & Soc. Servs.*, 88 P.3d 527, 529 (Alaska 2004) (citing *A.B. v. State, Dep't of Health & Soc. Servs.*, 7 P.3d 946, 950 (Alaska 2000)).

**25.** *Id.* (citing *S.S.M. v. State, Dep't of Health & Soc. Servs.*, 3 P.3d 342, 344 (Alaska 2000)).

**26.** *Carl N. v. State, Dep't of Health & Soc. Servs.*, 102 P.3d 932, 935 (Alaska 2004) (citing *Sherry R. v. State, Dep't of Health & Soc. Servs.*, 74 P.3d 896, 901 (Alaska 2003) (CINA statutes and rules); *J.J. v. State, Dep't of Health & Soc. Servs.*, 38 P.3d 7, 8 (Alaska 2001) (ICWA)).

**27.** 25 U.S.C. § 1912(e) (2006). In *Danielle A.*, we said Danielle waived this argument by failing to raise it in her opening brief. *See Danielle A. v. State, Dep't of Health & Soc. Servs., Office of*

court to find that: (1) the child is a child in need of aid and (2) "continued OCS custody is in the child's best interests." We agree with OCS.

ICWA requires courts to make subsection 1912(e) findings to remove an Indian child from the custody of his or her parent or Indian custodian,[28] but ICWA does not address custody extensions.[29] Here, the issue is extending OCS custody so Roberta and Danielle may reunify gradually, not removal.[30]

Alaska's CINA statutes and rules expressly address custody extensions.[31] As OCS points out, courts in Alaska must make two findings before extending OCS's custody of a child: (1) the child continues to be a child in need of aid and (2) extended custody is in the child's best interests.[32] Alaska's CINA statutes and rules do not require courts to make ICWA's section 1912(e) removal findings to extend custody; we have not held otherwise [33] and we do not now.[34]

**B. The Superior Court Did Not Clearly Err in Extending OCS's Custody of Roberta.**

**1. The superior court did not clearly err in finding Roberta continued to be a child in need of aid.**

■ Danielle argues the court erroneously found that Roberta continues to be a child in

need of aid based on its previous finding of neglect. She claims the court must determine a child's CINA status "at the time of adjudication, not at some earlier time." OCS disagrees, arguing that the legislature amended former AS 47.10.010, which required courts to adjudicate CINA status based on conditions existing at the time of adjudication, and that the amended version of the statute permits courts to look at past conduct or conditions.

OCS has the better of these arguments. Consideration of past neglect is consistent with our statutes and case law. Alaska Statute 47.10.011 provides that "the court may find a child to be a child in need of aid if it finds by a preponderance of the evidence that the child has been subjected to" any of twelve conditions, including "neglect." [35] We have interpreted this statute as "only requir[ing] a finding that the child 'has been' subjected to neglect," and we have clarified that in determining a child's CINA status, the trial court may consider " 'all evidence of the parent's pre-termination hearing conduct, including evidence of parental conduct pre-

*Children's Servs.*, Mem. Op. & J. No. 1339, 2009 WL 1140442, at *4 n. 27 (Alaska, Apr. 29, 2009).

**28.** *See* 25 U.S.C. § 1912(e) (2006); CINA R. 10(c)(3).

**29.** *See* 25 U.S.C. §§ 1901–1922.

**30.** *See Danielle A.*, 2009 WL 1140442, at *4 (explaining "[t]he trial and related [placement] decision [in December 2007 and June 2008] did not involve Roberta's removal from Danielle's home, as she had long since been removed").

**31.** *See* AS 47.10.080(c)(1)(A); AS 47.10.083; CINA Rule 19.2.

**32.** *See* AS 47.10.080(c)(1)(A); AS 47.10.083; CINA Rule 19.2.

**33.** *See* AS 47.10.080(c)(1)(A); AS 47.10.083; CINA Rule 19.2; *A.H. v. State*, 779 P.2d 1229, 1233 & n. 4 (Alaska 1989) (concluding superior court did not clearly err in finding returning

children to parent's home would result in serious harm under section 1912(e) without explicitly holding that section applied to the extension of custody); *In re A.S.*, 740 P.2d 432, 433 n. 1 (Alaska 1987) (concluding appellant had waived this argument by failing to properly brief or preserve it); *In re D.C.*, 715 P.2d 1, 1 (Alaska 1986) (vacating and remanding order of foster care placement of Indian child because court had not issued written factual findings and expert witness did not give the predictive testimony required by section 1912(e), but not clarifying whether the issue was extension of custody or removal); *Danielle A.*, 2009 WL 1140442, at *4 nn. 22 & 27 (concluding mother waived this argument for failure to raise it in her opening brief).

**34.** Because we conclude the court was not required to make section 1912(e) removal findings to extend OCS's custody of Roberta, we do not reach the parties' arguments about whether the court made such findings.

**35.** AS 47.10.011(9).

dating the CINA adjudication.' "[36] The court did not err in adjudicating Roberta's CINA status based on Danielle's previous neglect; the record supports the court's finding that Roberta has been exposed to neglect.[37]

### 2. The superior court did not clearly err in finding that extending custody was in Roberta's best interests.

■ The court found that returning Roberta to Danielle immediately would not be in Roberta's best interests. It found that a gradual transition would increase the likelihood of successful reunification and ordered review of the case every two months for the following six months "to see how everything is progressing." The court stated: "If things progress faster, then as soon as the therapists believe that the mother should have the child, or the child's with the mother full-time, that will be the ultimate proof" and "there will be reunification."

The record supports the court's findings and order. Extending custody to permit a gradual reunification and to avoid the emotional trauma that can result from immediate transition may be in the child's best interests.[38] In another case concerning an Indian child, we concluded the superior court did not err by extending custody where the GAL stated that doing so was in the child's best interests, and where the social worker "explicitly stated in the petition for extension that returning the child to her mother without a gradual reunification process ... would be likely to cause emotional damage to the child."[39]

Here, the GAL stated in her report that "[a]n abrupt return home is seen as potentially damaging and not clinically sound."

She recommended "[a] gradual increase in to [Danielle's] full time care ... to provide [Danielle] with more parenting experience ... as well as providing the family with stability and clinical support." She reported that the family's clinical treatment team proposed a six-month transition plan. The GAL also told the court "if you rush [reunification], this is going to be detrimental and not be a success," "[t]he child is not ready," and returning Roberta to Danielle immediately would "harm this family." The OCS social worker agreed. And although the family therapist stated she had observed "positive interaction" between Danielle and Roberta, she recommended "that visits continue to increase," not that Roberta be returned to Danielle immediately.

This evidence, viewed in the light most favorable to OCS, more than adequately supports the court's finding that extending custody to permit a gradual reunification was in Roberta's best interests.

### C. The Superior Court Must Inquire into and Determine Whether OCS Is Making Active Efforts Under CINA Rule 10.1(b) Before It Extends OCS's Custody of a Child.

■ Danielle contends that Alaska's CINA Rule 10.1(b) requires the superior court to determine whether OCS complied with ICWA's placement and active efforts requirements under 25 U.S.C. §§ 1915(b) and 1912(d), respectively, before it may extend OCS's custody of an Indian child. She claims the court erred in issuing the December 2008 order extending custody without making placement or active efforts findings. OCS concedes that if CINA Rule 10.1(b) requires superior courts to make these

**36.** *A.H. v. State, Dep't of Health & Soc. Servs.*, 10 P.3d 1156, 1161 (Alaska 2000) (quoting *D.M. v. State, Div. of Family & Youth Servs.*, 995 P.2d 205, 209 (Alaska 2000)); *see also id.* (holding Indian child was a child in need of aid based on a history of neglect and emphasizing AS 47.10.011 uses the past tense, *"has been* subjected to" (quoting AS 47.10.011) (emphasis in *A.H.*) (internal quotation marks omitted)).

**37.** The cases Danielle cites to support her argument otherwise are unpersuasive because they deal with CINA adjudications under the former

statute, AS 47.10.010, which did not use the past tense "has been subjected to" and which was amended to include this language in 1998. *See D.M.*, 995 P.2d at 207, 208 n. 7; *V.D. v. State, Dep't of Health & Soc. Servs.*, 991 P.2d 214, 216 (Alaska 1999); former AS 47.10.010 (1997); ch. 99, § 18, SLA 1998.

**38.** *In re A.S.*, 740 P.2d 432, 436 (Alaska 1987).

**39.** *Id.*

ICWA findings, the superior court erred by extending custody without making them. But OCS argues reversal is not required because CINA Rule 10.1(b)(2) provides that a finding that these ICWA requirements have not been met "is not in itself a ground for restoring the child to the parent."[40] Alternatively, OCS urges us to remand so the superior court can make any necessary findings.

CINA Rule 10.1 sets forth the requirements for ordering out-of-home placements. Subsection (b) applies to cases involving Indian children. It states:

> (1) *Findings.* At each hearing at which the court is authorizing an Indian child's removal from the child's parent ... or continuing a previous order authorizing removal, the court shall inquire into and determine:

> (A) whether the Department has complied with the placement requirements of 25 U.S.C. § 1915(b) and

> (B) whether active efforts have been made to provide remedial services and rehabilitative programs as required by 25 U.S.C. § 1912(d).[41]

This rule applies when a court continues a previous order authorizing removal; therefore, it applies to custody extensions. The rule requires the superior court to "inquire into and determine" whether OCS has complied with ICWA's placement and active efforts requirements each time the court addresses custody extensions.

It is uncontested that the superior court extended OCS custody in this case without addressing ICWA's placement or active efforts requirements. Because the court did not make this inquiry or determination, we must remand.[42]

In *Danielle A.*, we concluded that the court's finding that active efforts had not been made did not require reversing the order extending OCS's custody of Roberta.[43] In reaching that result, we relied on CINA Rule 10.1(b)(2), which "make[s] clear that 'a finding that the [active efforts] requirements ... have not been met is not in itself a ground for restoring the child to the parent ... or dismissing the petition.'"[44] In this appeal, the court made no active efforts findings. It is the absence of any inquiry into whether OCS was making active efforts that requires remand.

Roberta's case illustrates the importance of making this inquiry: she has been in OCS's custody for over four years.[45] Since the court denied the petition to terminate parental rights, OCS has presented the court with evidence of the difficulties it has encountered in trying to reunify Roberta and Danielle, difficulties that have required it to seek custody extensions and that have delayed achieving permanency. The inquiry required by CINA Rule 10.1(b)(2) gives the court an important opportunity to discover why reunification has not been achieved. When OCS is making active efforts and reunification is significantly delayed, the permanency goal may need to be revisited. When reunification is not occurring because OCS is not making active efforts, the court may direct an appropriate response. Either way, the findings required by CINA Rule 10.1(b)(2) provide an important check on the reunification process to insure that permanency is achieved as soon as possible.

Although we emphasize the importance of making this inquiry and determination, our holding does not require the immediate return of Roberta to Danielle's custody. On remand, the superior court must make the inquiry and determination required by CINA Rule 10.1(b)(2) on an expedited basis.[46]

**40.** See *supra* note 12 for the full text of CINA Rule 10.1(b)(2).

**41.** CINA Rule 10.1(b)(1).

**42.** Because we remand, we do not address the parties' arguments as to whether OCS made active efforts.

**43.** *Danielle A. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, Mem. Op. & J.

No. 1339, 2009 WL 1140442, at *5 (Alaska, Apr. 29, 2009).

**44.** *Id.* (quoting CINA Rule 10.1(b)(2)) (second alteration in *Danielle A.*).

**45.** *Danielle A.*, 2009 WL 1140442, at *1.

**46.** The court's June 2008 order includes the finding that OCS complied with ICWA's placement requirements, and the record does not indicate

## V. CONCLUSION

The superior court was not required to make removal findings to extend OCS custody. We AFFIRM the court's finding that Roberta remains a child in need of aid. We REMAND to the superior court for the active efforts finding required by CINA Rule 10.1(b).

that Roberta's foster home has changed. Therefore, we do not remand for a determination of compliance with ICWA's placement requirements.

Danielle failed to brief the other arguments she lists in her supplemental points on appeal, so we consider those points waived. *Washington Ins. Guar. Ass'n v. Ramsey*, 922 P.2d 237, 247 n. 29 (Alaska 1996).