NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| SARAH G., | ) | |
| | ) | Supreme Court No. S-14804 |
| Appellant, | ) | |
| | ) | Superior Court Nos. |
| v. | ) | 3PA-10-00013/14/15 CN |
| | ) | |
| STATE OF ALASKA, | ) | MEMORANDUM OPINION |
| DEPARTMENT OF HEALTH | ) | AND JUDGMENT* |
| & SOCIAL SERVICES, | ) | |
| OFFICE OF CHILDREN'S | ) | No. 1456 – April 3, 2013 |
| SERVICES, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Gregory L. Heath, Judge.

Appearances: Olena Kalytiak Davis, Anchorage, for Appellant. Megan R. Webb, Assistant Attorney General, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Appellee.

Before: Fabe, Chief Justice, Stowers and Maassen, Justices, and Eastaugh, Senior Justice.** [Carpeneti and Winfree, Justices, not participating.]

---

[*]    Entered under Alaska Appellate Rule 214.

[**]    Sitting by assignment made under article IV, section 11 of the Alaska Constitution and Alaska Administrative Rule 23(a).

## I.    INTRODUCTION

Sarah G. appeals the termination of her parental rights to her three youngest children. She challenges the superior court's rulings that (1) her children were in need of aid under several statutory grounds; (2) she failed to remedy the conditions that placed her children in need of aid; (3) the Office of Children's Services (OCS) made active efforts to reunify the family as required by the Indian Child Welfare Act (ICWA); (4) reunifying the family would, beyond a reasonable doubt, be likely to cause the children serious harm; and (5) termination of her parental rights was in the children's best interests. We affirm the superior court's determination that the children were in need of aid under AS 47.10.11(10). And because we conclude that the superior court did not commit legal error, and that its factual findings were not clearly erroneous, we also affirm the superior court's decision in all other respects.

## II.    FACTS AND PROCEEDINGS

Sarah G. is the biological mother of Wes, Marco, Dustin, and Skyla.[1] The children are Indian children under ICWA. The children have been in OCS custody for five of the past six years.[2] While in OCS custody, Wes turned 18 and was emancipated. The other three children were 15, 12, and 10 respectively when Sarah's parental rights were terminated.

Sarah was in a relationship with Wilson, the children's biological father, for over 15 years. Throughout the relationship, the children witnessed and were

---

[1]    To protect their privacy, we use pseudonyms for family members.

[2]    *See Wilson W. v. State, Office of Children's Servs.*, 185 P.3d 94, 97 (Alaska 2008) (children taken into OCS custody in October 2006); *Sarah G. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 264 P.3d 831, 832 (Alaska 2011) (custody released to Sarah in June 2009; children again taken into OCS custody in February 2010).

subjected to abuse.[3]  Because of the pattern of abuse and Sarah's failure to understand that the violence affected her children, the children were removed from their parents' care in 2006.[4]  A more detailed history of the circumstances surrounding that removal and the pattern of abuse is set out in *Wilson W. v. State, Office of Children's Services.*[5]

In June 2009 the children were released to Sarah's custody.  Sarah divorced Wilson and obtained a restraining order.[6]  Although OCS set up family therapy and individual therapy for Marco, Sarah discontinued these services.  At some point Sarah began a relationship with Frank.  Then OCS received several reports of harm based on domestic violence.  In February 2010 police were called to the family's home after a physical altercation between Frank, Sarah, Wes, and Marco.  As a result of this altercation and the reports of harm, the children were again taken into OCS custody and the superior court adjudicated them to be in need of aid.[7]  Invoking AS 47.10.011(8)(B)(ii), we affirmed that adjudication.[8]  Further details about the conditions that rendered the children in need of aid are set out in *Sarah G. v. State, Department of Health & Social Services, Office of Children's Services.*[9]

Marco, Dustin, and Skyla have severe mental health and behavioral issues that have been attributed to witnessing domestic violence.  Marco was initially diagnosed

---

[3]    *Wilson W.*, 185 P.3d at 96-99.

[4]    *Id*.

[5]    185 P.3d 94 (Alaska 2008).

[6]    *Sarah G.*, 264 P.3d at 832.

[7]    *Id.* at 831-33.

[8]    *Id.* at 833.

[9]    264 P.3d 831 (Alaska 2011).

with post-traumatic stress disorder and a depressive disorder. He has made significant progress with individual counseling and his foster parents. Dustin, on the other hand, continues to have severe mental health issues. He was diagnosed with major depressive disorder, post-traumatic stress disorder, intermittent explosive disorder, attention deficient hyper activity disorder (ADHD), and oppositional defiant disorder. After exhibiting aggression in his initial foster care placement, he was moved twice to residential hospitals in Alaska. In May 2011 Dustin was moved to a more intensive secure treatment facility out of state. Dustin returned to Alaska in November 2011 and was placed in a therapeutic foster home. He still requires significant outpatient therapy. Skyla was diagnosed with post-traumatic stress disorder, ADHD, and reactive attachment disorder. She was twice admitted to a residential treatment center for aggressive behavior and suicidal ideations. At the time of the termination trial, she had been placed in a therapeutic foster home. Skyla engages in individual counseling and, according to her therapist, will need a substantial amount of therapy for several years to come.

Sarah has a long history of substance abuse and mental health issues, which have contributed to her repeated engagement in violent relationships. Sarah's case plan attempted to address these issues and required her (1) to complete mental health counseling and medication management; (2) to complete a psychological evaluation and follow the recommendations; (3) to complete a substance abuse assessment and follow the recommendations; (4) to submit to random urinalysis testing; (5) to participate in parenting classes; and (6) to participate in the Women's Alternative to Violence program at Alaska Family Services. The plan also directed her to participate in regular and consistent visitation with her children.

Sarah's participation in her case plan was minimal. For the first seven months she did not complete any case plan requirements. In November 2010 she completed a parenting class and a psychological evaluation with Dr. Melinda Glass. Dr.

Glass diagnosed Sarah with a depressive disorder, alcohol abuse, and dependent personality disorder. According to Dr. Glass, Sarah needed comprehensive treatment to address her mental health and substance abuse issues. The evaluation also noted that Sarah continually minimized her problems with alcohol and its effects on her children. Sarah was given a copy of the evaluation, and her caseworker emphasized that she must remain in treatment. But Sarah did not consistently attend treatment and stopped going altogether for eight months, between May and December 2011.

Sarah's participation in visitation was also minimal. She gave a variety of unconvincing excuses for her lack of participation. OCS attempted to accommodate her complaints by relocating the visits, by providing her with transportation, and by allowing for liberal contact with her children. But her participation remained inconsistent.

Sarah continued to use alcohol and drugs throughout 2011. In June 2011 Sarah was arrested for filing a false report. During an alcohol-fueled verbal conflict, Sarah was waving her arms while holding a knife and stabbed herself. She reported to the police that she had been stabbed by a stranger. Sarah later pleaded guilty to filing a false report. As part of her sentence, Sarah was required to complete a substance abuse assessment. Sarah completed the substance abuse assessment in December 2011 and began outpatient treatment in January 2012. In the substance abuse assessment Sarah failed to accurately disclose her history of substance abuse and treatment.[10]

Sarah also failed to complete urinalysis testing until October 2011, when she was required to complete a urinalysis test in order to visit Dustin at his out-of-state treatment facility. Sarah assured her caseworker that the test would be negative and left

---

[10] Sarah failed to disclose: (1) having blackouts from combining alcohol and Ambien; (2) taking Xanax presently; and (3) engaging in alcohol treatment previously and being discharged for non-compliance. Sarah's report that she only drank on Sundays was contradicted by several incidents memorialized in the record.

for the visit, but she instead tested positive for alcohol and marijuana. She never completed the required domestic violence class.

In January 2012 OCS filed a petition to terminate Sarah's parental rights.[11] Superior Court Judge Gregory L. Heath held a termination trial over two days in April 2012. The court found that: (1) all three children were in need of aid under AS 47.10.011(6), (8), (10), and (11); (2) Sarah had failed to remedy her conduct; (3) OCS had made active and reasonable efforts to reunite the family; (4) if returned to Sarah's custody the children were, beyond a reasonable doubt, likely to suffer physical and emotional damage; and (5) termination of Sarah's parental rights was in all three children's best interests. Sarah appeals each of these findings.

## III.  STANDARD OF REVIEW

We review de novo whether the superior court's findings satisfy the requirements of the child in need of aid statute and ICWA.[12] A superior court's factual findings are reviewed for clear error.[13] "Findings of fact are clearly erroneous if a review of the entire record in the light most favorable to the prevailing party below leaves us with a definite and firm conviction that a mistake has been made."[14]

---

[11]     The petition also concerned Wilson W.'s parental rights. The termination of Wilson's parental rights is not at issue in this appeal.

[12]     *Carl N. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 102 P.3d 932, 935 (Alaska 2004) (citing *Sherry R. v. State, Dep't of Health & Soc. Servs.*, 74 P.3d 896, 901(Alaska 2003) (CINA rules and statutes); *J.J. v. State, Dep't of Health & Soc. Servs.*, 38 P.3d 7, 8 (Alaska 2001) (ICWA)).

[13]     *Ralph H. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 246 P.3d 916, 920 (Alaska 2011) (citing *Frank E. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 77 P.3d 715, 717 (Alaska 2003)).

[14]     *Dale H. v. State, Dep't of Health & Soc. Servs.*, 235 P.3d 203, 209-10
(continued...)

Whether OCS has made active efforts to reunite an Indian family, and whether, beyond a reasonable doubt, an Indian child will likely suffer serious physical and emotional damage if returned to a parent's custody, present mixed questions of law and fact.[15] When reviewing mixed questions of law and fact, we review factual questions for clear error and legal questions using our independent judgment.[16]

## IV. DISCUSSION

### A. The Superior Court Did Not Err In Concluding That The Children Were In Need Of Aid Under AS 47.10.011(10).

In order to terminate parental rights a court must find, by clear and convincing evidence, that the children are in need of aid under AS 47.10.011.[17] The superior court found that the children were in need of aid under four subsections of AS 47.10.011: subsection (6) (physical harm); subsection (8) (mental injury); subsection (10) (substance abuse); and subsection (11) (mental health). Sarah appeals each of these findings.

Sarah argues that because she has ended her relationships with Wilson and Frank, the children are no longer in need of aid under AS 47.10.011(6) and (8). She also

---

[14]     (...continued)
(Alaska 2010) (quoting *Brynna B. v. State, Dep't of Health & Soc. Servs.*, 88 P.3d 527, 529 (Alaska 2004)) (internal quotation marks omitted).

[15]     *Jon S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 212 P.3d 756, 761 (Alaska 2009) (citing *E.A. v. State, Div. of Family & Youth Servs.*, 46 P.3d 986, 989 (Alaska 2002) (beyond a reasonable doubt likely to cause serious harm); *T.F. v. State, Dep't of Health & Soc. Servs.*, 26 P.3d 1089, 1092 (Alaska 2001) (active efforts)).

[16]     *Ben M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 204 P.3d 1013, 1018 (Alaska 2009) (citing *A.M. v. State*, 945 P.2d 296, 304 n.10 (Alaska 1997)).

[17]     AS 47.10.088.

argues that because there is no substantive evidence that either her use of alcohol or any mental disorder has affected her children directly, her children are not in need of aid under AS 47.10.011(10) and (11).

Sarah's previous appeal challenged each of the grounds on which the superior court adjudicated the children to be in need of aid.[18] In reliance on AS 47.10.011(8)(B)(ii), we affirmed that adjudication. In Sarah's present appeal, we now affirm the superior court's finding that Sarah's substance abuse issues place her children in need of aid under AS 47.10.011(10). We therefore do not need to consider whether the superior court's findings under any of the other subsections of AS 47.10.011 were clearly erroneous, including the ruling under AS 47.10.011(8), which we previously affirmed.[19] We also do not need to consider Sarah's argument that she has remedied her conduct under AS 47.10.011(8) and that the superior court's reliance on her "continued tendency to enter into physically abusive relationships" was erroneous.[20]

A child is in need of aid under AS 47.10.011(10) if the parent's "ability to parent has been substantially impaired by the addictive or habitual use of an intoxicant, and the addictive or habitual use of the intoxicant has resulted in a substantial risk of harm to the child."

---

[18] *Sarah G. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 264 P.3d 831, 833 (Alaska 2011) ("[Sarah appealed] the superior court's finding that all four children were adjudicated in need of aid under AS 47.10.011(8), (10) and (11), and the two eldest children were also in need of aid under AS 47.10.011(4) and (6).").

[19] *See Jon S.*, 212 P.3d at 762 (citing *G.C. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 67 P.3d 648, 651 (Alaska 2003)) (holding only one statutory basis is necessary to affirm termination of parental rights).

[20] *Sarah G.*, 264 P.3d at 833.

Sarah has a long history of alcohol abuse.[21] Yet throughout the proceedings Sarah minimized or was untruthful about her use of alcohol. Dr. Glass explained that Sarah's substance abuse "is an overarching [problem] that undermines her ability to think, her impulse control, her judgment, and her ability to adequately parent [her children]." Dr. Glass attributed Sarah's tendency to enter into physically abusive relationships to her untreated substance abuse and mental health issues. Sarah's use of alcohol fueled conflict in her relationships and prevented her from being able to protect her children from these dangerous relationships.

All three children suffer from post-traumatic stress disorder and other serious mental health issues, as a result of witnessing domestic violence. The record also indicates that the children were physically abused by Wilson, Frank, and Sarah. And the court heard testimony from multiple experts that further exposure to domestic violence presented a high risk of mental injury to the children. This evidence establishes that the superior court did not clearly err in finding that Sarah's use of alcohol substantially impaired her ability to parent and that her use of alcohol resulted in a substantial risk of harm to her children.

### B. The Superior Court Did Not Clearly Err In Finding That Sarah Failed To Remedy The Conditions That Placed Her Children In Need Of Aid.

---

[21] The record indicates that Sarah has struggled with alcohol abuse for a long time. As early as 2002, Sarah recognized that she should never use alcohol again. Wilson testified that throughout their marriage Sarah had a drinking problem and became violent when she used alcohol. During the first OCS case, Sarah was required to complete substance abuse treatment, but she was discharged for noncompliance. Dr. Glass's psychological evaluations in 2007 and 2010 explained that Sarah needed to address her alcohol abuse issues in order to safely parent her children.

In order to terminate parental rights, the superior court must also find by clear and convincing evidence that the parent has not within a reasonable time remedied the conditions or conduct which placed the children at substantial risk of harm.[22]

Sarah argues that she remedied the conditions that placed her children in need of aid under AS 47.10.011(10) because she was "four months sober and actively engaged in a treatment program at the time of the termination trial." OCS responds that evidence demonstrated that Sarah's alcohol abuse issues had not been sufficiently addressed by four months of treatment. We agree with OCS.

In *Sherry R. v. State, Department of Health & Social Services, Division of Family & Youth Services*, we concluded that one year of sobriety was insufficient to remedy the conditions that placed a child in need of aid, where the parent had a long history of substance abuse.[23] Like Sarah, Sherry R. had a long history of involvement with OCS, had been referred previously for substance abuse treatment unsuccessfully, and did not acknowledge the extent of her substance abuse problems.[24]

The superior court did not clearly err in finding that Sarah's four months of outpatient treatment were insufficient to remedy her long history of alcohol abuse. Sarah only belatedly entered into treatment for her longstanding problem with alcohol. And when she completed the substance abuse assessment, she was not forthcoming about

---

[22]    AS 47.10.088(a)(2); *see also Barbara P. v. State, Dep't of Health & Soc. Servs.*, 234 P.3d 1245, 1260 (Alaska 2010).

[23]    74 P.3d 896, 902-03 (Alaska 2003).

[24]    *Id.* at 898-900 (noting parent had contact with Division of Family & Youth Services regarding other children beginning ten years before termination and had been referred for treatment on several occasions).

the extent of her substance abuse and her previous attempts at treatment.[25] Based on this inaccurate assessment, she was directed to complete outpatient treatment. Dr. Glass testified that outpatient treatment would not adequately address Sarah's substance abuse issues.

Even if treatment were successful, Dr. Glass expressed the opinion that Sarah would need a year of demonstrating internalized change before she would be able to safely parent her children. Sarah's caseworkers agreed with Dr. Glass and testified that Sarah had not internalized the change necessary to remedy the conditions that placed her children in need of aid. The lack of internalized change was also demonstrated at trial: After participating in Alcoholics Anonymous for over four months, Sarah could not recite a single one of the program's 12 steps. Sarah continued to minimize her history of substance abuse and failed to recognize the substantial risk to her children that resulted from her use of alcohol. We agree with Judge Heath's comment that there was "no evidence which would lead the court to believe that [Sarah] has internalized the change necessary for her children to be safely returned to her care." Based on this evidence, we affirm the superior court's finding that Sarah had failed to remedy the conduct that placed her children in need of aid.

**C. The Superior Court Did Not Err In Concluding That OCS Made Active, But Unsuccessful, Efforts At Reunification.**

Under ICWA and CINA Rule 18(c)(2) a superior court must find, by clear and convincing evidence, that "active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful."[26] The superior court found that OCS

---

[25]    *See supra* note 10.

[26]    25 U.S.C. § 1912(d) (2006).

had made active efforts to reunite the family, but that those efforts were unsuccessful and that Sarah "has only recently been willing to participate in some of the referred services." It effectively concluded that the lack of success was not attributable to OCS's efforts, but to Sarah's unwillingness to participate meaningfully in her case plan requirements.

Sarah argues that OCS failed to make active efforts at reunifying her family. She advances three main arguments: (1) OCS failed to complete various foundational tasks such as reviewing her case plan or the recommendations of her psychological evaluation with her; (2) OCS did not make active efforts up until the termination trial; and (3) given her tendency to obfuscate or minimize her problems, OCS should have kept a closer watch on her. OCS argues that the efforts and resources expended in an effort to reunite the family were extensive. It also argues that those efforts to reunite the family were unsuccessful due to Sarah's minimal participation, her refusal to cooperate with OCS, and OCS's difficulty communicating with Sarah.

Sarah's case was handled primarily by two caseworkers over the duration of the case. The record shows that these caseworkers provided extensive services for Sarah and her children.[27]

---

[27] The superior court accurately listed OCS's efforts as follows:

[OCS] arranged for family contact with [Sarah] through [Alaska Family Services], the OCS office, [treatment facilities], and through the Knik Tribe; provided timely case planning services with referrals and the offer of assistance in setting up services; provided bus passes to facilitate family contact and completion of case plan requirements; referrals for parenting classes, referrals for substance abuse assessments; provided referrals and funding for psychological evaluations; referrals to [domestic violence classes]; referrals and funding for psychological evaluations for [Wes] and [Marco], referrals and funding for various mental health

(continued...)

There is no support for Sarah's assertion that her caseworkers failed to complete foundational tasks. A caseworker reviewed the case plan requirements with Sarah, and provided her with a copy of the case plan, a letter outlining each requirement, and a list of approved service providers. Sarah indicated to her caseworkers that she understood the requirements. Referrals were made for every requirement. And the importance of compliance was communicated repeatedly to Sarah. The caseworkers provided Sarah with everything necessary for her to be successful in her case plan.

Although there is some support for Sarah's assertion that OCS's efforts waned from late 2011 until the termination trial,[28] we are ultimately unconvinced that OCS's efforts were not active. During the final months, Sarah reported to her caseworker that she did not need anything else in order to complete the case plan requirements. Furthermore, the OCS caseworker had difficulty checking on Sarah's progress, because her phone was disconnected or her voice mail was full. Sarah's evasive conduct also made it difficult to provide other services. For example, Sarah falsely reported to her caseworker that she had been attending her individual therapy sessions. In another instance, Sarah produced a certificate from a domestic violence

---

[27]    (...continued)
programs, placements, and counselors; facilitated team decision making meetings, administrative reviews, and treatment team meetings; and provided referrals for therapeutic foster homes.

[28]    In the final four months, OCS's log notes show that the caseworker called Sarah only four times, and met with her only once. As a result of the lack of communication, the caseworker was unaware that Sarah had completed a substance abuse assessment in December 2011 until a report was received from the program. But after learning of the assessment, the caseworker sent information to the program to provide a more accurate picture of Sarah's history of alcohol abuse. The caseworker also tried unsuccessfully to check on how treatment was going.

-13-                                                    *1456*

class she had taken in 2008 in an attempt to avoid the requirement that she complete another domestic violence class.  OCS is not required to constantly monitor parents who refuse to participate and attempt to mislead their caseworkers. [29]

Even if we were to assume that there was some lapse in active efforts during the final months before termination, the superior court permissibly found that OCS's efforts were active.  When evaluating whether OCS has made active efforts, we consider the State's involvement in its entirety.[30]  In *E.A. v. State, Division of Family & Youth Services*, we explained that the State's failure to make active efforts for a seven-month period was insignificant in light of the extensive remedial efforts the State made over a period of ten years.[31]  Given the substantial efforts made by the State and the parent's demonstrated unwillingness to participate in treatment, we explained that there was no reason to think that additional months of effort would have prevented termination of the parent's rights.[32]

Here, for almost six years OCS had provided numerous services directed at reunifying the family.  The record supports the superior court's finding that Sarah was

---

[29]    *See E.A. v. State, Div. of Family & Youth Servs.*, 46 P.3d 986, 990 (Alaska 2002) (noting failed attempts to contact or obtain information could qualify as active efforts where a parent's evasive conduct made the provision of services practically impossible).

[30]    *Maisy W. v. State, ex rel. Dep't of Health & Soc. Servs., Office of Children's Servs.*, 175 P.3d 1263, 1269 (Alaska 2008); *see also E.A.*, 46 P.3d at 990.

[31]    *E.A.*, 46 P.3d at 991.

[32]    *Id.* at 991; *see also N.A. v. State, DFYS*, 19 P.3d 597, 603 (Alaska 2001) (stating that there was no reason to think DFYS's failure to enroll parent in yet another residential dual-treatment program would have resulted in more successful outcome); *K.N. v. State*, 856 P.2d 468, 477 (Alaska 1993) (noting that "[a]lthough . . . DFYS might have done more, it is unlikely that further efforts by DFYS would have been effective in light of [the parent's] attitude").

unwilling to participate in the rehabilitative programs required by her case plan. Sarah refused to complete a domestic violence class. For an eight-month period, she stopped attending individual counseling and medication management appointments. She entered into substance abuse treatment over a year after Dr. Glass directed her to do so. After OCS took custody of her children in 2006, Sarah demonstrated an unwillingness to participate in similar case plan requirements. For example, she entered substance abuse treatment, but later falsely reported that she had completed another substance abuse assessment that said she did not need treatment. She was then discharged from the program for noncompliance. Under these circumstances, there is no reason to think that additional efforts by OCS would have prevented this result.[33]

Based on the evidence of OCS's efforts to reunify the family for over six years, Sarah's unwillingness to participate in rehabilitative programs, and Sarah's evasive conduct, we affirm the superior court's conclusion that OCS made active efforts at reuniting the family.

D. **The Superior Court Did Not Err In Determining That, Beyond A Reasonable Doubt, The Children Would Likely Suffer Substantial Harm If Returned To Sarah's Custody.**

Before terminating parental rights to an Indian child, a state must prove beyond a reasonable doubt that "continued custody of the child by the parent . . . is likely to result in serious emotional or physical damage to the child."[34] Proof that a parent's custody is likely to cause a child serious harm requires a showing that "(1) the parent's conduct is likely to harm the children and (2) the parent's conduct is unlikely to

---

[33] *See supra* note 32; *see also Wilson W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 185 P.3d 94, 101 (Alaska 2008) ("If a parent has a long history of refusing treatment and continues to refuse treatment, OCS is not required to keep up its active efforts once it is clear that these efforts would be futile.").

[34] 25 U.S.C. § 1912(f) (2006).

change."[35]  This proof must include qualified expert testimony based upon the particular facts and issues of the case.[36]

Sarah seems to challenge the superior court's reliance on generalized testimony about the effects of domestic violence and outdated psychological evaluations. We agree with OCS's response that the superior court's conclusion was supported by expert and lay witnesses.  And the expert witness testimony was based on the particular facts and issues of Sarah's case.

Sarah is correct that we require more than generalized testimony about the harm resulting from a parent's conduct.[37]  But there is no specific formula for what expert testimony is required.[38]  We have not required that experts meet with the parties in every case, or that updated psychological evaluations must be obtained before trial.[39] The superior court here properly relied on testimony of several experts with varying

---

[35]     *Ben M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 204 P.3d 1013, 1020 (Alaska 2009) (citing *L.G. v. State, Dep't of Health & Soc. Servs.*, 14 P.3d 946, 950 (Alaska 2000)).

[36]     *E.A.*, 46 P.3d at 991 (citing *C.J. v. State, Dep't of Health & Soc. Servs.*, 18 P.3d 1214, 1218 (Alaska 2001)).

[37]     *See C.J.*, 18 P.3d at 1218 (holding testimony of expert was insufficient to support termination where expert's "conclusion appear[ed] to be little more than generalizations about the harms resulting from a parent's absence and provid[ed] little discussion of the particular facts of [the] case").

[38]     *See, e.g.*, *J.A. v. State, DFYS*, 50 P.3d 395, 400-02 (Alaska 2002) (holding expert testimony was sufficiently based on particular facts of case where experts reviewed select records and were asked hypothetical questions drawn from the facts of the case); *E.A.*, 46 P.3d at 991 (holding expert testimony was sufficient to support superior court's conclusion even though neither expert evaluated the parent and information from their meeting with the child was outdated).

[39]     *See supra* note 37.

degrees of contact with the children and Sarah to support its conclusion that returning the children to Sarah's custody would likely result in serious harm.[40] Dr. Glass evaluated Sarah in 2007 and 2010 and was asked hypothetical questions based on Sarah's conduct after the 2010 evaluation. The children's therapists also expressed opinions about the risk of harm that Sarah's conduct presented to her children. Judy Gette was the only expert witness who had not met with Sarah or her children, but her general conclusions on domestic violence and its effect on children were supplemented by other evidence showing Sarah's history of conduct. Viewed as a whole, the superior court's conclusion was supported by expert testimony based on the particular facts and issues of the case.[41]

Sarah argues again that because she had ended her abusive relationships and engaged in four months of substance abuse treatment, the superior court clearly erred in finding that no reasonable doubt existed as to whether the children would likely suffer emotional or physical harm in the future. We disagree. As we discussed above, four months of treatment was not sufficient to eliminate the risk that Sarah would again engage in harmful conduct.[42] Sarah had only recently entered alcohol treatment and had not demonstrated any internal change. The expert witnesses and caseworkers all agreed

---

[40]    The superior court qualified the following witnesses as experts, and relied on their testimony: Judy Gette (expert on domestic violence), Dr. Melinda Glass (who evaluated Sarah in 2007 and 2010), Velma Metz (Dustin's treating therapist at the out-of-state behavioral facility), and Thomas Lytle (Dustin's therapist). There is no indication the superior court erred in qualifying any expert witness.

[41]    *See Ben M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 204 P.3d 1013, 1020 (Alaska 2009) (explaining testimony of lay witnesses and expert witnesses may be aggregated to meet this burden of proof); *see also E.A*, 46 P.3d at 992 (citing 25 U.S.C. § 1912(f) (2000)) ("ICWA does not require that the experts' testimony provide the sole basis for the court's conclusion; ICWA simply requires that the testimony support that conclusion.").

[42]    *See supra* Part IV.C.

that as a result of Sarah's unresolved substance abuse issues, there remained a significant risk of harm to the children. There was also general agreement that repeated trauma from being subjected to domestic violence presented a high risk of emotional damage to these children, and that any exposure to domestic violence would interfere with their healing process.

In sum, the superior court did not err in finding that, beyond a reasonable doubt, the children were likely to suffer substantial harm if returned to Sarah's care. The finding was adequately supported by expert and lay witness testimony.

E. **The Superior Court Did Not Clearly Err In Finding That Termination Of Parental Rights Served The Best Interests Of The Children.**

In order to terminate parental rights to a child, a superior court must also find, based on a preponderance of the evidence, that termination is in the child's best interests.[43] The superior court found that the three children, who have been out of their mother's custody for five of the past six years, had an overwhelming need for permanency. Relying on expert testimony, the court found that it would be at least a year before Sarah could safely parent her children. And even if Sarah were able to safely parent her children, it may not be in her children's best interests to be returned to her care.

Sarah argues that the superior court's finding is clearly erroneous because: (1) she has remedied the conditions that placed her children at risk of harm; (2) she has a strong bond with her children; and (3) it was against the children's best interests to be severed from their Native heritage.

As discussed above, Sarah has not remedied the conditions that placed her children in need of aid, and her children remain at risk of harm if they are returned to her

---

[43] CINA Rule 18(c)(3); *see also* AS 47.10.088(c).

care. The children's bond with Sarah does not change our analysis. Although the therapists noted that Dustin and Skyla may have difficulty accepting the termination at first, the therapists nonetheless thought it would be better for the children's mental health in the long run. There was general agreement among OCS caseworkers and the children's therapists that termination was in the best interests of each child. Based on this evidence, the superior court's findings are not clearly erroneous.

Sarah's argument that the superior court erred in failing to consider that termination would sever the children from their Native heritage is without merit. To the extent this argument actually challenges placing the children with non-Indian families, a termination trial is not the proper forum to challenge a placement decision.[44] In *Lucy J.*, we rejected a similar argument that a superior court must conduct a more complex evaluation of an Indian child's best interests; we instead held that compliance with ICWA placement preferences is not relevant to a best interests analysis.[45] We explained that we will consider a challenge to a termination order and a challenge to a placement decision separately.[46]

---

[44]    *Lucy J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 244 P.3d 1099, 1120 (Alaska 2010).

[45]    *Id.* at 1120 (rejecting parents' argument that in cases concerning Indian children a best interests analysis required a more complex evaluation, including "consideration of the importance of having the child raised within the Indian child's community"); *see also Adina B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, Mem. Op. & J. No. 1411, 2012 WL 516007 at *3 (Alaska, Feb. 2, 2012) (holding ICWA does not require that placement options be considered when terminating parental rights); *Jacob W. v. State, Dep't of Health & Soc. Servs, Office of Children's Servs.*, Mem. Op. & J. No. 1319, 2008 WL 5101809 at *9 (Alaska, Dec. 3, 2008) (same).

[46]    *Lucy J.*, 244 P.3d at 1120 (citing *Alyssa B. v. State, Dep't of Health & Soc.*
(continued...)

Furthermore, the record does not support Sarah's argument that the superior court erred in failing to consider that termination was not in the children's best interests because it would sever the children's connection to their Native culture. The superior court heard evidence that Marco's foster parents had him participating in dances and functions in the Native community. Sarah points to testimony of Skyla's therapist that association with cultural identity was not "a primary need." But Skyla's therapist acknowledged the importance of Skyla's cultural identity and merely testified that given her extensive mental health issues, association to cultural identity was not essential to her treatment at the time. This testimony does not overcome the opinions of the caseworkers and therapists that termination was in the best interests of the children.

## V.  CONCLUSION

For the foregoing reasons, we AFFIRM the superior court's termination of Sarah's parental rights.

---

[46]   (...continued)

*Servs., Div. of Family & Youth Servs.*, 165 P.3d 605, 617 (Alaska 2007) (refusing to review a placement review decision as part of a termination proceeding because the placement decision was a final and appealable order)); *see also Jacob W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, Mem. Op. & J. No. 1319, 2008 WL 5101809 at *9 (Alaska, Dec. 3, 2008) (explaining that nothing in ICWA requires a court to consider placement options in determining whether to terminate parental rights).