NOTICE

*Memorandum decisions of this court do not create legal precedent.  A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

# THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| WYATT W., ) | Supreme Court Nos. S-16628/16633 |
| Appellant, ) | (Consolidated) |
| v. ) | Superior Court No. 4FA-16-00161 CN |
| STATE OF ALASKA, ) | MEMORANDUM OPINION |
| DEPARTMENT OF HEALTH & ) | AND JUDGMENT* |
| SOCIAL SERVICES, OFFICE OF ) | |
| CHILDREN'S SERVICES, ) | No. 1663 – January 17, 2018 |
| Appellee. ) | |
| TRENA S., ) | |
| Appellant, ) | |
| v. ) | |
| STATE OF ALASKA, ) | |
| DEPARTMENT OF HEALTH & ) | |
| SOCIAL SERVICES, OFFICE OF ) | |
| CHILDREN'S SERVICES, ) | |
| Appellee. ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Paul R. Lyle, Judge.

---

\*       Entered under Alaska Appellate Rule 214.

Appearances: Brian D. Camozzi, Camozzi Legal Services, Seattle, Washington, for Appellant Wyatt W. Emily Jura, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Appellant Trena S. Marianna Carpeneti, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Appellee. Carol L. Jacoby, Assistant Public Advocate, Fairbanks, and Richard K. Allen, Public Advocate, Anchorage, for Guardian Ad Litem.

Before: Stowers, Chief Justice, Maassen, and Bolger, Justices. [Winfree and Carney, Justices, not participating.]

## I.   INTRODUCTION

A father and mother separately appeal the termination of their parental rights to their adolescent daughter. Each argues that the superior court erred in finding that the daughter was a child in need of aid and that termination of parental rights was in her best interests. They specifically challenge the superior court's reliance on their prior conduct in deciding to terminate their parental rights. In addition, the mother argues that the court erred in finding that the Office of Children's Services (OCS) made reasonable efforts at reunification and rehabilitation. And the father alleges that the superior court's reliance on his testimony at the adjudication trial as evidence of his demeanor was in error and violated his right to assistance of counsel. Finding no error, we affirm the superior court's order.

## II.   FACTS AND PROCEEDINGS

### A.   Petition, Removal, Adjudication, And Case Plan Progress

Marilyn W., born in 2005, is the daughter of Trena S. and Wyatt W.[1] Trena has a history of drug use, involving mainly methamphetamine, and convictions for drug-

---

[1]     We use pseudonyms throughout to protect the family's privacy.

related crimes, and Wyatt has a history of criminal convictions for violent crimes, including ones involving domestic violence. Both Trena and Wyatt have other children from previous relationships, and each has a history with OCS that predates Marilyn. Marilyn first came into OCS custody in 2007, after Trena was arrested for driving under the influence of methamphetamine with Marilyn in the car. Trena ultimately pleaded no contest to DUI and drug charges. Both parents participated in OCS's case plan, and Marilyn was returned to their care after about four months. In subsequent years, OCS received numerous unsubstantiated reports alleging drug use, physical abuse, and neglect by Trena and Wyatt.

In December 2014, when Marilyn was nine years old, OCS filed a non-emergency petition to adjudicate Marilyn as a child in need of aid.[2] It does not appear that any specific event triggered the petition, but rather the culmination of years of reported issues. In general, the petition alleged drug use and domestic violence in the home.[3] Marilyn continued to live with Trena and Wyatt until the temporary custody hearing in January 2015. At the hearing, Trena stipulated to removal of Marilyn from their home, and OCS took custody of Marilyn.[4] The remainder of the hearing was continued. At the rescheduled temporary custody hearing the next month, the parties again stipulated that Marilyn could remain in an out-of-home placement pending the

---

[2]     The petition also asked that two other children be adjudicated children in need of aid, but these children are not the subject of this appeal.

[3]     As the superior court noted in its termination order, no evidence substantiating specific allegations in the petition was introduced at any point in the termination proceedings. Indeed, "[v]ery little time was spent at trial explaining why [Marilyn] came into custody in 2014."

[4]     Wyatt was unrepresented at this hearing and did not join the stipulation; it appears he left the hearing early. He obtained counsel before the continued hearing.

adjudication hearing scheduled for May. Marilyn was initially placed in the home of her paternal grandmother, but was relocated to a foster home after OCS received a report of domestic violence in her grandmother's home.

In April 2015, OCS created case plans for Trena and Wyatt that set out dual goals for both parents: ceasing substance abuse and preventing domestic violence. To meet these goals, the case plans required Trena and Wyatt to complete a parental risk assessment and attend parenting education classes. The case plans also instructed Trena and Wyatt to undergo a substance abuse assessment and follow all of its recommendations, as well as provide random urinalysis tests (UA) for controlled substances. OCS provided referrals and paid for all of these services.

Trena and Wyatt initially struggled to make progress on these goals. In the six months after the case plans were established, each parent called in for a UA only a handful of days, despite the case plans providing they would call in each weekday. All of Wyatt's UAs were positive for marijuana. Neither attended parenting classes during this time despite receiving a referral. And though Trena and Wyatt did attend family therapy together, they stopped attending after the therapist recommended a transition to individual therapy. Each also participated in a parenting risk assessment conducted by Dr. Nina Wendt, a clinical psychologist, but they did not follow through on all of her recommendations, which included anger management counseling for Wyatt and domestic violence prevention programming, substance abuse counseling, and Narcotics Anonymous meetings for Trena. Further impeding progress on their case plan goals, the two were involved in a domestic violence incident in June 2015. During an argument, Wyatt punched and shattered Trena's car door window while she and another daughter were inside, resulting in injuries to the daughter. Wyatt ultimately pleaded guilty to harassment.

The parents' adjudication hearing commenced on June 23, 2015. Wyatt testified at the hearing and was questioned about his criminal history and his history with OCS. He repeatedly answered these questions "I don't know" or "Don't remember" and resisted attempts to refresh his recollection, a tactic which he admitted was simply a manner of avoiding answering the questions. The superior court judge admonished Wyatt that he was "effectively in contempt of court" and warned him that his refusal to respond was "fatal" and "very detrimental" to his case. On the second day of the hearing, Trena and Wyatt stipulated that Marilyn was a child in need of aid due to neglect under AS 47.10.011(9). In addition, Wyatt and OCS stipulated that Wyatt's UAs would be positive for marijuana but that Wyatt's marijuana use would either decrease or he would obtain a medical marijuana prescription.

Trena and Wyatt made more progress on their goals after the adjudication hearing. Beginning in November 2015, they each began calling in for regular UAs, although they still missed some days. In addition, despite initially resisting, Trena started attending individual counseling in January 2016. A family counselor stated that Trena was sober during this time. However, this progress came to a halt after Trena gave birth to twin girls in March 2016. OCS initially permitted her to take the twins home from the hospital on the condition that she stay with a friend and prevent the children from having contact with Wyatt. But about a week later, after concerning reports from Trena's doctor and observation of her erratic behavior during a home visit, OCS took the twins into emergency custody based on suspicion that Trena had relapsed.

An emergency temporary custody hearing took place March 25, 2016; the court found by a preponderance of the evidence that Trena had relapsed after giving birth to the twins. During her testimony, Trena denied having relapsed, but conceded she was concerned she might relapse in the near future. Days later, on March 29, Trena told drug

counselor Christy Pichette that she had relapsed the prior week. She later denied having told Pichette this.

After the twins were born, both Trena and Wyatt stopped calling in for regular UAs and refused to participate in hair follicle testing. Pursuant to Pichette's recommendation for a medium intensity inpatient drug program, Trena applied for an inpatient program at the Women & Children's Center for Inner Healing. In the course of applying, Trena told another family counselor that she had relapsed. Trena later admitted she had said this but claimed she lied because she believed she had to be actively using drugs in order to be eligible for the inpatient program. Trena alleges that she was not ultimately admitted to the program because OCS refused to provide the requisite documentation on the basis that the program did not offer domestic violence programming.

Trena continued visitation with Marilyn but exhibited signs of drug use during some visits. And Wyatt was discharged in March from the visitation program that the family was attending after he stated he would no longer be attending visits. In the 10 months he was enrolled in the program, he attended 53% of his visits. At the visits he did attend, he often failed to engage with Marilyn or left early. Wyatt's cooperation with OCS also diminished; he exhibited hostility in meetings with OCS workers, refused to speak, and often stormed out of meetings early.

B.   **Termination Trial And Decision**

The parents' four-day termination trial was held in September 2016. At the beginning of the trial, OCS offered into evidence the testimony from the prior hearings in the case, to which there was no objection. In February 2017, the superior court issued an order terminating Trena's and Wyatt's parental rights to Marilyn. Among the superior court's key factual findings by clear and convincing evidence were: (1) Trena had

relapsed on methamphetamine around the time of the twins' birth in March 2016; and (2) Wyatt had "abandoned [Marilyn] by his shallow participation in his case plan." Based on these findings, the superior court found that, with respect to Trena, Marilyn was a child in need of aid under AS 47.10.011(6) (physical harm), (9) (neglect), and (10) (parental substance abuse). And with respect to Wyatt, the court found that Marilyn was a child in need of aid under AS 47.10.011(1) (abandonment), (6), (8) (mental harm), and (9). The superior court specifically cited Wyatt's adjudication hearing testimony as evidence of "his recalcitrance and hostility."

The superior court further found that OCS made reasonable efforts to achieve reunification, and specifically found that OCS's refusal to provide Trena the requisite letter to enter an inpatient substance abuse program on the basis that it lacked a domestic violence component was reasonable in light of "[Trena's] relapse, the length of time OCS had been working with this family and the slow progress that [Trena] ha[d] made" in treatments designed to address domestic violence. Finally, the superior court found that termination was in Marilyn's best interests because she was "no closer to reunification now than she was in December 2014," when OCS first filed the petition that brought her into OCS custody. The court highlighted Marilyn's age (at the time eleven and a half years old) and how it heightened her need for a stable, safe home.

Both Trena and Wyatt appeal the termination of their parental rights to Marilyn.

## III. STANDARD OF REVIEW

Whether a child is in need of aid is a factual finding that we review for clear error, as is whether termination is in the child's best interests.[5] A finding is "clearly

---

[5]     *Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's*
(continued...)

erroneous" if a review of the entire record leaves us "with a definite and firm conviction that a mistake has been made."[6] Generally, conflicting evidence is insufficient to overturn the superior court's decision, and "we will not reweigh evidence when the record provides clear support for the superior court's ruling."[7] Additionally, we give deference to the superior court's credibility assessments, particularly those based on oral testimony.[8]

Whether a parent's due process rights have been violated is a question of law.[9] We review questions of law de novo, adopting "the rule of law that is most persuasive in light of precedent, reason, and policy."[10] And whether OCS has made reasonable reunification and rehabilitation efforts is a mixed question of law and fact.[11]

---

[5]    (...continued)
*Servs.*, 310 P.3d 943, 948-49 (Alaska 2013).

[6]    *Barbara P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1253 (Alaska 2010) (quoting *Brynna B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 88 P.3d 527, 529 (Alaska 2004)).

[7]    *Christina J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 254 P.3d 1095, 1103 (Alaska 2011) (quoting *Maisy W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 175 P.3d 1263, 1267 (Alaska 2008)).

[8]    *Hannah B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 289 P.3d 924, 930 (Alaska 2012).

[9]    *D.M. v. State, Div. of Family & Youth Servs.*, 995 P.2d 205, 207 (Alaska 2000).

[10]    *Hannah B.*, 289 P.3d at 930 (quoting *Tessa M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 182 P.3d 1110, 1114 (Alaska 2008)).

[11]    *Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 310 P.3d 943, 949 (Alaska 2013).

Regardless of the applicable standard of review, we "bear in mind at all times that terminating parental rights is a drastic measure."[12]

## IV. DISCUSSION

### A. The Superior Court Did Not Clearly Err In Finding Marilyn A Child In Need Of Aid.

In order to terminate parental rights, the superior court must find by "clear and convincing" evidence that the child is in need of aid because he or she "has been subjected to conduct or conditions described in AS 47.10.011."[13] "[O]nly one statutory basis is required to find that a child is in need of aid."[14] Both Trena and Wyatt challenge the superior court's finding that Marilyn is a child in need of aid.

#### 1. Trena

One of the bases on which the superior court found that Trena had caused Marilyn to be a child in need of aid was AS 47.10.011(10). A child is in need of aid under subsection (10) if the parent's "ability to parent has been substantially impaired by the addictive or habitual use of an intoxicant, and the addictive or habitual use of the intoxicant has resulted in a substantial risk of harm to the child."[15] On appeal, Trena argues that the superior court's finding as to subsection (10) is clear error because, although there was evidence she struggled with substance abuse, there was no evidence of her having "a pattern of poor parental judgment, absenteeism, neglect or inadequate supervision." Absent such a pattern, Trena contends that the superior court had

---

[12] *Hannah B.*, 289 P.3d at 930 (quoting *Christina J.*, 254 P.3d at 1104).

[13] AS 47.10.088(a)(1).

[14] *Martha S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 268 P.3d 1066, 1080 (Alaska 2012).

[15] AS 47.10.011(10).

insufficient evidence to support its finding that Trena's substance abuse placed Marilyn at substantial risk of harm.

The superior court's finding that Trena's habitual drug use substantially impaired Trena's ability to parent and placed Marilyn at substantial risk of harm is amply supported by the record. Trena was convicted in 2007 after she drove under the influence of methamphetamine with Marilyn as a passenger. The 2007 incident shows that Trena's methamphetamine use has resulted in a substantial risk of harm to Marilyn in the past, satisfying the statutory requirements of subsection (10). Further, during her parental risk assessment with Dr. Wendt, Trena conceded that her past drug use had negatively affected her ability to parent. And Dr. Wendt testified at the termination trial that if Trena was abusing drugs, her ability to care for her children would continue to be impaired. Indeed, OCS workers observed Trena exhibiting potentially dangerous handling of her infant twin daughters while she appeared to be under the influence of drugs.

Trena argues that it was error for the superior court to consider her 2016 relapse, which occurred after Marilyn left her custody, because the language of subsection (10) requires proof that her drug use "has resulted in a substantial risk of harm to the child." But as noted above, the court could consider Trena's behavior beginning with the 2007 DUI incident to determine that Marilyn had been exposed to substantial harm. The evidence of Trena's 2016 relapse was separately relevant to show that

Trena's drug use was "addictive" and that her "ability to parent" had been "substantially impaired" by this addiction.[16] Accordingly, we affirm the superior court's finding that Marilyn is a child in need of aid under subsection (10).[17]

### 2. Wyatt

One of the bases on which the superior court found that Wyatt had caused Marilyn to be a child in need of aid was AS 47.10.011(1). A child is in need of aid under subsection (1) if "a parent . . . has abandoned the child as described in AS 47.10.013, and the other parent is absent or has . . . created conditions that cause the child to be a child in need of aid."[18] Under AS 47.10.013, the court may find abandonment of a child if a parent, "without justifiable cause," has "failed to participate in a suitable plan or program designed to reunite the parent . . . with the child."[19] Although AS 47.10.013 "does not necessarily require a parent to follow his or her reunification plan to the letter" in order to avoid an abandonment finding, "it does require more than minimal participation."[20]

---

[16] We note that if a child has been found to be in need of aid under this subsection, then the statute expressly allows the court to presume the parent's impairment and the risk of harm to a child when the parent relapses within one year after rehabilitation. AS 47.10.011(10).

[17] Because we affirm the superior court's child in need of aid finding with respect to Trena on this basis, we do not address the superior court's other bases or Trena's respective arguments. *See Rick P. v. State, OCS*, 109 P.3d 950, 956 (Alaska 2005) (noting that it is unnecessary to consider other child in need of aid findings where one ground is supported by the record).

[18] AS 47.10.011(1).

[19] *See* AS 47.10.013(a)(4).

[20] *Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 310 P.3d 943, 950 (Alaska 2013) (quoting *A.B. v. State, Dep't of Health & Soc. Servs.*, 7 P.3d 946, 951 (Alaska 2000)).

The record supports the superior court's finding that Wyatt abandoned Marilyn by failing to comply with several important aspects of his case plan. Wyatt's case plan focused on the dual goals of ceasing substance abuse and mitigating instances of domestic violence. As to the former, in the approximately 20 months that Marilyn was in OCS custody prior to the termination trial, Wyatt called in for regular UAs for only about five months. At the time of the termination trial, he had not called in for a single UA in over three months. Further, he did not comply with the stipulation that he either decrease marijuana use or obtain a medical marijuana prescription. Indeed, Wyatt testified that at the time of the termination trial he continued to use marijuana several times per week, oftentimes more than once per day, and there is no evidence that he obtained a prescription. And though Wyatt obtained two substance abuse evaluations during the time Marilyn was in OCS custody, at trial there was no evidence that Wyatt had participated in the recommended outpatient treatment program.

As for the second goal, addressing Wyatt's history of domestic violence, Wyatt did obtain a parental risk assessment but refused to engage in the recommended individual therapy. Wyatt testified at trial that he was engaged in a domestic violence program but refused to articulate what he was working on in the program. And during the time Marilyn was in OCS's custody, Wyatt was convicted of harassment for punching in a car window while Trena and another child were inside.

Moreover, although Wyatt attended 53% of his visits with Marilyn in the 10 months he was engaged in the visitation program, this figure overstates his level of participation. The visitation program worker who supervised his visits described Wyatt as "basically disengaged during visits" and testified that he failed to talk to or interact with Marilyn. At one visit, he told Marilyn "not to bother coming [to the next visit because] it was not worth it." Wyatt was discharged from the visitation program in March because he stated he would stop attending visits. After his discharge, the visits

moved to OCS, where Wyatt remained unengaged during his visits with Marilyn. In addition, Wyatt also exhibited hostility and uncooperativeness in his interactions with OCS workers, further impeding his case plan participation. Wyatt therefore failed to comply with the two major goals of his case plan and has asserted no justification for this failure.[21] Given this failure, combined with the fact that Trena's conduct has also caused Marilyn to be in need of aid, we cannot say that the superior court clearly erred in finding that Wyatt caused Marilyn to be a child in need of aid by virtue of his abandonment.[22]

B.    **The Superior Court Did Not Violate Trena's Or Wyatt's Due Process Rights By Relying On Prior Conduct.**

Both Trena and Wyatt each argue that the superior court violated their due process rights to raise Marilyn without state interference by relying primarily on "remote" and "attenuated" evidence from 2007 in its order terminating their parental rights. They further note that OCS never submitted evidence showing why it petitioned for adjudication of Marilyn as a child in need of aid in 2014; its evidence at trial instead focused either on old conduct or conduct that postdated the 2014 petition.

We recognize the fundamental liberty interest that parents have in raising their children independent of government interference.[23] However, this right is not violated by considering parents' past conduct, in addition to more recent events, when assessing the need for state intervention. We have repeatedly held that a court may

---

[21]    *See id.* (affirming finding of abandonment because the father had "failed to comply with several important aspects of his case plan").

[22]    Again, because we affirm on this basis, we do not address the other bases on which the superior court found Wyatt had caused Marilyn to be a child in need of aid.

[23]    *See D.M. v. State, Div. of Family & Youth Servs.*, 995 P.2d 205, 217 (Alaska 2000) (Bryner, J., dissenting); *see also Troxel v. Granville*, 530 U.S. 57, 68-69 (2000).

consider "all evidence of the parent's pre-termination hearing conduct, including evidence of parental conduct predating the CINA adjudication."[24] Even if a parent has made progress over the years with assistance from OCS, the superior court does not err by determining that such progress is insufficient to weigh against the termination of parental rights.[25] Furthermore, the prior conduct that the superior court considered here was clearly connected to the current issues with Trena's and Wyatt's conduct and its effect on Marilyn. Both then and now, Trena struggled with substance abuse and Wyatt struggled with violence.

In addition, Trena's and Wyatt's argument concerning the lack of evidence supporting the 2014 petition is without merit. They did not contest probable cause at the temporary custody hearing in January 2015, or at the rescheduled hearing the next month. Instead, they stipulated to OCS having temporary custody of Marilyn.[26] And at the adjudication hearing, they stipulated that Marilyn was a child in need of aid. Though Trena and Wyatt correctly note that such a stipulation is insufficient to establish that Marilyn was a child in need of aid at the termination trial,[27] it does undercut their argument that they had not caused Marilyn to be a child in need of aid at the time the

---

[24]     *See Danielle A. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 215 P.3d 349, 354-55 (Alaska 2009) (quoting *A.H. v. State, Dep't of Health & Soc. Servs.*, 10 P.3d 1156, 1161 (Alaska 2000)).

[25]     *Barbara P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1259 (Alaska 2010) (holding that mother's new sobriety did not negate past drug use as a factor in determining whether the child was in need of aid); *see also R.C. v. State, Dep't. of Health & Soc. Servs.*, 760 P.2d 501, 505 (Alaska 1988).

[26]     Although Wyatt did not have an attorney at the January temporary custody hearing, Wyatt's counsel declined to contest probable cause at the continued temporary custody hearing the next month.

[27]     *Barbara P.*, 234 P.3d at 1256 & n.25.

petition was filed. Given this stipulation, nothing prevented the superior court from considering Trena's and Wyatt's entire history of conduct in deciding whether to terminate their parental rights.[28]

### C. The Superior Court Did Not Err In Finding That OCS Made Reasonable Efforts Towards Reunification And Rehabilitation.

Trena challenges the superior court's finding that OCS made reasonable efforts to reunite her with Marilyn. She notes OCS failed to provide her the necessary documentation for admission to an inpatient substance abuse program at a critical time when she was in the midst of a relapse. She asserts that the superior court erred in concluding that this failure "was justified by [her] questionable motivation in attending treatment, her recent relapse, the length of the case," and the fact that her desired program did not also address domestic violence issues.

The CINA statute requires OCS to "make timely, reasonable efforts to provide family support services to the child and to the parents . . . that are designed . . . to enable the safe return of the child to the family home."[29] Such efforts include identifying family support services and actively offering and referring the parent to these services.[30] Where community-based services are available and desired by the parent, the department "shall" refer the parent to or provide information on such programs.[31] In determining whether OCS satisfied this obligation, the superior court "considers [OCS's]

---

[28] *Id.*

[29] AS 47.10.086(a).

[30] *Id.*

[31] AS 47.10.086(a)(2).

reunification efforts in their entirety."[32] Even if OCS fails to make reasonable efforts during "a portion of the time that it worked with the parent," it may nevertheless satisfy the requirement.[33] "Reunification efforts need not be perfect; they need only be reasonable under the circumstances depending upon: the parent's substance abuse history . . . ; [the parent's] willingness to participate in treatment; the history of services provided by OCS; and the parent's level of cooperation with OCS's efforts."[34] "A parent's demonstrated unwillingness to participate in treatment may be considered in determining the reasonableness of state efforts."[35]

Here, the superior court found by clear and convincing evidence that OCS met this burden, despite the fact that there may have been a "lapse" in its reasonable efforts between March and September 2016, after OCS refused to assist Trena in admission to her preferred inpatient treatment program. The court acknowledged that OCS's refusal to approve the inpatient program because it did not have a domestic violence component was questionable given that, at that point, Trena was no longer living with Wyatt, her primary issue at that point was her relapse, and a recent substance abuse assessment had recommended inpatient treatment. The court nevertheless determined that any concerns about OCS's refusal were obviated by Trena's continuing denial that she had relapsed during that time, despite overwhelming evidence that she had. The superior court reasoned that because Trena had demonstrated an unwillingness

---

[32] *Barbara P.*, 234 P.3d at 1262.

[33] *Audrey H. v. State, Office of Children's Servs.*, 188 P.3d 668, 678-79 (Alaska 2008).

[34] *Shirley M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 342 P.3d 1233, 1240 (Alaska 2015).

[35] *Audrey H.*, 188 P.3d at 678.

to admit her addiction, her complaint that OCS did not assist her in obtaining treatment was unavailing.

We defer to the court's credibility assessment of Trena's testimony because it is well supported by the record. Throughout the proceedings, Trena repeatedly asserted that she had not relapsed after the twins' birth, disagreed with the recommendation of the substance abuse assessment that she seek inpatient treatment, and did not attend either of the two alternative inpatient programs to which the drug counselor referred her. We cannot say that the superior court clearly erred in finding that she did not truly desire to commence treatment; it was permissible to credit the evidence indicating to the contrary. OCS accordingly did not fail its reasonable efforts obligation by failing to provide her the requisite documentation for admission to her preferred treatment program. And OCS otherwise provided many services to Trena over the approximately 20 months that Marilyn was in OCS custody prior to the termination trial. It created four different iterations of her case plan, and it provided referrals to and paid for multiple substance abuse assessments, a parental risk assessment, and individual and family therapy. We find no error in the superior court's conclusion that these services amounted to reasonable efforts.

### D. The Superior Court Did Not Clearly Err In Finding That Terminating Parental Rights Was In Marilyn's Best Interests.

Both Trena and Wyatt contend that the court erred in finding that OCS had established by a preponderance of the evidence that it was in Marilyn's best interests to terminate their parental rights. They fault the superior court for treating Marilyn like a generic 11-year-old and failing to consider the specific circumstances of this case: evidence showed that Marilyn was bonded with Trena; there was no evidence that Marilyn bonded with her foster parents, that they wished to adopt her, or that Marilyn had a prospect for a future permanent placement; and Trena and Wyatt would continue

to visit the twins (Marilyn's sisters), who were in the same foster home as Marilyn, which could cause her emotional injury.

When terminating parental rights, a court "shall consider the best interests of the child."[36] The burden falls on OCS to prove "by a preponderance of the evidence that termination of parental rights is in the best interests of the child."[37] "A superior court may consider any fact relating to the best interests of the child in its best-interests analysis."[38] Although "[n]either the statute nor the rule defines best interests,"[39] facts relating to the best interests of the child may include: (1) the likelihood of returning the child to the parent within a reasonable time based on the child's age or needs; (2) the amount of effort by the parent to remedy the conduct or the conditions in the home; (3) the harm caused to the child; (4) the likelihood that the harmful conduct will continue; and (5) the history of conduct by or conditions created by the parent.[40] These "factors are not exclusive, nor is consideration of each factor mandatory."[41] Moreover, the superior court need not accord a particular weight to any given factor.[42]

---

[36]    AS 47.10.088(c).

[37]    CINA Rule 18(c)(3).

[38]    *Hannah B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 289 P.3d 924, 932 (Alaska 2012).

[39]    *Thea G. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 291 P.3d 957, 966 (Alaska 2013).

[40]    AS 47.10.088(b).

[41]    *Thea G.*, 291 P.3d at 966.

[42]    *Barbara P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1263 (Alaska 2010).

The superior court found that all five factors weighed in favor of terminating parental rights, and concluded that Marilyn, who had spent about 20 months in OCS custody and was approaching her teenage years, needed permanency and stability that her parents could not provide. The court noted that Trena had relapsed, disagreed with her treatment recommendations, and failed to re-engage in any treatment. Likewise, Wyatt refused to engage in individual therapy to address his anger issues. None of these findings are clearly erroneous. All support the court's conclusion that parental efforts at rehabilitation are currently low, harmful conduct is likely to continue, and the likelihood of reunification in a reasonable time, based on the fact that Marilyn is approaching her teenage years, is slim.

Trena and Wyatt base their argument on a dissenting opinion in one of our prior cases.[43] Trena urges that a closer look at the history of her conduct reveals sobriety and adequate parenting for many years. However, the superior court was not required to weigh one factor — in this instance, "the history of conduct by or conditions created by the parent"[44] — more heavily than the others.[45] It chose instead to weigh her current conduct and relapse more heavily. Further, although there is support in the record for Trena's assertion that she and Marilyn are bonded, testimony of a bond between a parent

---

[43]     *Thea G.*, 291 P.3d at 971 (Carpeneti, J., dissenting) ("[I]f courts were justified in determining only the best interests of 'generic children' in making a best interests finding, it would appear that whenever all the other termination findings are satisfied — a child in need of aid finding, parental conduct remaining unremedied, reasonable efforts, and a substantial risk of harm to the child without termination — the best interests of the generic child will always be served by termination.").

[44]     AS 47.10.088(b)(5).

[45]     *See Barbara P.*, 234 P.3d at 1263.

and child does not dispositively tilt the best interests inquiry in favor of the parent.[46] Nor does a lack of evidence that OCS has found a pre-adoptive placement.[47] Finally, while Trena's and Wyatt's ongoing visitation of the twins at the same foster home where Marilyn is placed may cause pain and confusion to Marilyn, the decision to terminate their parental rights to Marilyn was based on a particularized assessment of Marilyn's age and the lengthy time in OCS custody (compared to that of the twins). Accordingly, the superior court's best interests finding is not clearly erroneous.

### E. The Superior Court Did Not Violate Due Process In Citing Wyatt's Adjudication Trial Testimony.

Wyatt argues that the superior court erred when it cited his adjudication hearing testimony, in which he repeatedly answered "I don't know" or "I don't remember" to straightforward questions about his background and personal life, as evidence of Wyatt's "recalcitrance" and "hostility."[48] He claims that relying on this testimony was unfair because the judge presiding over the adjudication hearing provoked and encouraged his purportedly hostile conduct and failed to give him an opportunity to consult with his attorney, effectively denying him his due process right to assistance of counsel.

Wyatt's argument lacks any merit. First, the judge did not encourage his hostile approach. To the contrary, the judge admonished Wyatt and advised him that his nonresponsive answers were detrimental to his case. Second, Wyatt enjoyed the full

---

[46]    *See id.*

[47]    *Doe v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 272 P.3d 1014, 1024 (Alaska 2012) (holding that the absence of a pre-adoptive placement triggers the agency's legal duty to find adoptive placements, a scenario which may be in the best interests of the child).

[48]    Wyatt does not challenge the admission of this testimony itself.

benefit of effective assistance from his court-appointed counsel. He cites no authority for the proposition that a court denies such assistance by, on its own initiative, failing to call for a break in proceedings when a party is floundering on the witness stand. And neither Wyatt nor his attorney requested such a break, even when the attorney for OCS suggested it. The superior court's reliance on Wyatt's adjudication trial testimony therefore did not implicate Wyatt's due process right to assistance of counsel, and we otherwise find no error in this reliance.

## V.    CONCLUSION

We AFFIRM the superior court's termination of Trena's and Wyatt's parental rights.